**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, )<br><br>Plaintiff, )<br><br>v. )<br><br>INTERNATIONAL MONETARY METALS, INC., and MARTIN SOMMERS, )<br><br>Defendants. ) | CIVIL ACTION NO.<br><br>Judge _____ |

**COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE**
**RELIEF AND CIVIL MONETARY PENALTIES UNDER THE**
**COMMODITY EXCHANGE ACT**

Plaintiff, U.S. Commodity Futures Trading Commission ("Commission" or

"CFTC"), by its attorneys, alleges as follows:

## I.    SUMMARY

1.      From at least July 16, 2011 to March 2013 ("Relevant Period"), Defendant

International Monetary Metals, Inc. ("IMM"), by and through its officers, employees and

agents, including its President, Defendant Martin Sommers ("Sommers") (collectively,

"Defendants") solicited millions of dollars from retail investors for illegal, off-exchange

financed precious metals transactions.

2.      In connection with these activities, Defendants offered to enter into,

entered into, executed, confirmed the execution of, and/or conducted an office or

business in the United States, for the purpose of soliciting, or accepting orders for, or

otherwise dealing in transactions in, or in connection with, precious metals on a

leveraged, margined, or financed basis.  These transactions, as further described herein, were illegal, off-exchange retail commodity transactions.

3.    Moreover, Defendant IMM, in or in connection with these illegal off-exchange commodity transactions, accepted money, securities, or property (or extended credit in lieu thereof) to margin, guarantee, or secure trades or contracts that resulted or may have resulted therefrom, without registering with the Commission as a futures commission merchant ("FCM").

4.    By this conduct and the conduct further described herein, Defendants have engaged, are engaging, or are about to engage in conduct in violation of Sections 4(a) and 4d(a)(1) of the Commodity Exchange Act, as amended (the "Act"), 7 U.S.C. §§ 6(a) and 6d(a)(1) (2012), and are each directly liable for this conduct.

5.    IMM's employees and agents, including Defendant Sommers, committed the acts and omissions alleged herein within the course and scope of their employment, agency or office with IMM.  Therefore, IMM is liable pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), and Commission Regulation 1.2, 17 C.F.R. § 1.2 (2013), as principal for the violative acts and omissions of IMM's employees and agents, including Sommers.

6.    Sommers controlled IMM throughout the Relevant Period, and did not act in good faith or knowingly induced IMM's violations of the Act.  Therefore, Sommers is also liable for IMM's violations as a controlling person pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2012).

7.    Accordingly, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), the CFTC brings this action to enjoin the Defendants' unlawful acts and practices, to

compel their compliance with the Act, and to further enjoin them from engaging in any commodity-related activity, as set forth below.

8.      In addition, the CFTC seeks civil monetary penalties and remedial ancillary relief, including, but not limited to, trading and registration bans, restitution, disgorgement, rescission, pre- and post-judgment interest, and such other relief as the Court may deem necessary and appropriate.

9.      Unless restrained and enjoined by this Court, Defendants likely will continue to engage in the acts and practices alleged in this Complaint and similar acts and practices, as more fully described below.

## II.      JURISDICTION AND VENUE

10.      Section 6c(a) of the Act, 7 U.S.C. §13a-1(a), authorizes the Commission to seek injunctive relief against any person whenever it shall appear to the Commission that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of the Act or any rule, regulation, or order thereunder.

11.      The Commission has jurisdiction over the conduct and transactions at issue in this case pursuant to Section 2(c)(2)(D) of the Act, 7 U.S.C. § 2(c)(2)(D).

12.      Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e), because Defendants reside in this District, transacted business in this District, and certain transactions, acts and practices alleged in this Complaint occurred, are occurring, and/or are about to occur within this District.

## III.      THE PARTIES

13.      Plaintiff U.S. Commodity Futures Trading Commission is an independent federal regulatory agency charged by Congress with the administration and enforcement

of the Act, as amended, 7 U.S.C. §§ 1 *et seq*., and the Regulations promulgated thereunder, 17 C.F.R. §§ 1.1 *et seq*.

14.     Defendant International Monetary Metals, Inc. (which also sometimes referred to itself as IM Metals) ("IMM") is a Florida corporation, incorporated on April 21, 2008, with its principal place of business in Hollywood, Florida.  In its solicitation materials, IMM characterized itself as "a full service precious metals dealer."  IMM, using websites and telemarketers, solicited retail customers to invest in leveraged, margined, or financed precious metals transactions.  IMM ceased doing business in or about March 2013.  IMM has never been registered with the Commission in any capacity.

15.     Defendant Martin Sommers is an individual whose last known address was in Cooper City, Florida.  During the Relevant Period, Sommers was the President and controlling person of IMM.  Sommers has never been registered with the Commission in any capacity.

### IV.     OTHER RELEVANT ENTITIES

16.     IMM conducted its customers' financed precious metals transactions through either Worth Group Inc. ("Worth") or AmeriFirst Management, LLC ("AmeriFirst").

17.     Worth is a Florida corporation formed in June 2002 that has previously gone by the names of Wilshire Capital Management Corp. and Worth Bullion Group Inc. Worth describes itself as "a Florida-based precious metals wholesaler [that] might also be described as a dealer or broker of precious metals."  Worth's business office is located at 3900 Military Trail, Ste. 500, Jupiter, Florida, 33458.  Worth has never been registered with the Commission in any capacity.

18.     Plaintiff CFTC brought an action against Worth in this District, *CFTC v. Worth Group, Inc., et al.* Case No. 13-cv-80796-KLR (S.D. Fla., complaint filed August 13, 2013), alleging, *inter alia,* that Worth defrauded retail precious metals customers and engaged in illegal, off-exchange leveraged commodity transactions with retail customers. On January 23, 2014, the Court entered a Consent Order of Preliminary Injunction and Other Ancillary Relief (ECF No. 61) that, among other relief, appoints a corporate monitor as to Worth and enjoins Worth from violating certain provisions of the Act.  On April 14, 2014, the Court denied Worth's motion to dismiss (ECF No. 79).

19.     AmeriFirst is a Florida limited liability company that described itself on its website as a clearing and financing firm for precious metals dealers and claimed to provide dealers with "tangible assets in a growing physical market."  On its website, AmeriFirst offered gold, silver, and platinum in bar and coin form and provided customer financing options for precious metals dealers such as IMM that solicited and introduced retail customers to AmeriFirst.  AmeriFirst ceased doing business in or about February 2013.  AmeriFirst has never been registered with the Commission in any capacity.

20.     The Commission brought an action against AmeriFirst in this District, *CFTC v. AmeriFirst Management, LLC, et al.*, No. 13-cv-61637-WPD (S.D. Fla. complaint filed July 27, 2013).  On September 17, 2013, the Court entered a Consent Order of Permanent Injunction and Other Statutory and Equitable Relief finding that AmeriFirst violated Section 4(a) of the Act, 7 U.S.C. § 6(a), by engaging in illegal off-exchange commodity transactions with retail customers and that the Commission had jurisdiction over those transactions.  *See* Consent Order dated Sept. 17, 2013 (ECF No. 17).  AmeriFirst agreed to pay restitution and a civil monetary penalty, with the amounts

to be determined by the Court.  *See* Consent Order dated Sept. 17, 2013, at ¶¶ 44-46.  On July 24, 2014, the Court entered a Supplemental Consent Order assessing restitution in the amount of $25,515,732.85 and a civil monetary penalty of $10 million against the AmeriFirst defendants.  *See* Supplemental Consent Order dated July 24, 2014 (ECF No. 28).

21.     International Bullion Trading Group, Inc. ("IBT"), which was affiliated with IMM, was a Florida corporation that operated at the same address as IMM.  IMM and IBT had at least one common employee or agent.  As to the leveraged, margined, or financed precious metals transactions on behalf of IMM's customers that were introduced to AmeriFirst, although IMM solicited the customers and the customers paid their funds to IMM, when IMM submitted its customers' funds and orders to AmeriFirst, IMM funneled them through its affiliate IBT.  IBT was dissolved in or about September 2013.

## V.     STATUTORY BACKGROUND

22.     Section 2(c)(2)(D) of the Act, as amended by the Dodd-Frank Act, 7 U.S.C. § 2(c)(2)(D) (Supp. V 2011), gives the Commission jurisdiction over "any agreement, contract, or transaction in any commodity" that is entered into with, or offered to, a person that is not an eligible contract participant ("ECP") or eligible commercial entity ("ECE") "on a leveraged or margined basis, or financed by the offeror, the counterparty, or a person acting in concert with the offeror or counterparty on a similar basis," (referred to herein as "retail commodity transactions") with respect to conduct occurring on or after July 16, 2011, subject to certain exceptions not applicable here.  In relevant part, Section 2(c)(2)(D) of the Act, 7 U.S.C. § 2(c)(2)(D), makes Section 4(a) of

the Act, 7 U.S.C. § 6(a), applicable to retail commodity transactions "as if" such transactions were "contract[s] of sale of a commodity for future delivery.

23.     Section 1a(18)(xi) of the Act, 7 U.S.C. § 1a(18)(xi), defines an ECP, in relevant part, as an individual who has amounts invested on a discretionary basis, the aggregate of which exceeds $10 million, or $5 million if the individual enters into the transaction to manage the risk associated with an asset owned or liability incurred, or reasonably likely to be owned or incurred, by the individual.  Section 1a(17) of the Act, 7 U.S.C. § 1a(17), defines an ECE as an ECP that meets certain additional requirements, both financially and in its business.

24.     Section 4(a) of the Act, 7 U.S.C. § 6(a)(2012), in relevant part, makes it unlawful for any person to offer to enter into, enter into, execute, confirm the execution of, or conduct any office or business anywhere in the United States for the purpose of soliciting, accepting any order for, or otherwise dealing in any transaction in, or in connection with, a contract for the purchase or sale of a commodity for future delivery unless the transaction is conducted on or subject to the rules of a board of trade that has been designated or registered by the Commission as a contract market or derivatives transaction execution facility for such commodity.

25.     Section 4d(a)(l) of the Act, 7 U.S.C. § 6d(a)(l), makes it unlawful for any person to be a FCM unless such person is registered with the Commission.  The Act defines FCM to include an entity that is engaged in soliciting or accepting orders for, among other things, the purchase or sale of a commodity for future delivery, any commodity option authorized under Section 4c, or any retail commodity transaction.  The

Act further defines FCM to include any entity that acts as a counterparty in any retail commodity transaction.  7 U.S.C. §§ la(28)(A)(i)(l)(aa)(DD) and (bb) (2012).

## VI.    FACTS

26.    During the Relevant Period, Defendants offered to enter into, entered into, executed, confirmed the execution of, or conducted an office or business in the United States for the purpose of soliciting, or accepting orders for, or otherwise dealing in any transactions in, or in connection with, the purchase or sale of precious metals to or from retail customers on a leveraged, margined, or financed basis.  It is only the leveraged, margined or financed precious metals transactions that Defendants conducted through Worth and AmeriFirst that are at issue in this action.

27.    During the Relevant Period, IMM's principal place of business was located in Broward County, Florida.

28.    IMM, by and through its employees and agents, including Defendant Sommers, solicited customers by telemarketing and IMM's websites, www.internationalmonetarymetals.com and www.immetals.com, to engage in leveraged, margined, or financed precious metals transactions.  Sommers directly solicited retail customers to enter into leveraged, margined, or financed precious metals transactions.

29.    In the leveraged, margined, or financed precious metals transactions, IMM's customers invested only a percentage of the total metal value, as little as 20%, and would receive a loan from IMM for the remainder of the metal's value.  According to IMM's Customer Account Application and Agreement, IMM's customers were charged a finance charge on the loan (up to 7% above the prime rate), as well as administrative charges and service/storage charges on these transactions.

30.     IMM's customers also paid a commission on the total metal value per transaction, typically 15%.  Thus, due to the high fees, finance charges and commissions, IMM's customers rarely broke even on their investments, let alone earned a profit, because much of their principal investment was consumed by these charges.

31.     During the Relevant Period most, if not all, of IMM's customers were not ECPs or ECEs.

32.     After a customer was persuaded to invest, IMM, through its employees and agents including Sommers, collected funds from the customer for the transaction and, after deducting IMM's commissions and/or fees, sent the funds and submitted the customer's order to either Worth or AmeriFirst.

33.     During the Relevant Period, IMM solicited and accepted a total of at least $6 million from about 240 retail customers for precious metals transactions.  After IMM solicited retail customers and accepted customer orders and funds for leveraged, margined or financed precious metals transactions, IMM extracted large commissions and/or fees from the funds, then the orders and remaining funds were forwarded to either Worth or AmeriFirst.

34.     During the Relevant Period, IMM transferred at least $3.75 million to Worth for the purchase of precious metals on behalf of IMM customers.

35.     At least 68 of the precious metals transactions that IMM introduced to Worth on behalf of IMM's customers were leveraged, margined, or financed transactions. Worth failed to make actual delivery of precious metals to IMM's customers in these transactions.

36.     IMM's commissions in the 68 leveraged, margined, or financed precious metals transactions introduced to Worth that did not result in actual delivery of precious metals to IMM's customers totaled approximately $640,028.

37.      During the Relevant Period, IMM (through its affiliate IBT) transferred at least $705,095 to AmeriFirst on behalf of about fifteen IMM customers for leveraged, margined, or financed precious metals transactions.

38.     The commissions and fees collected from these customers totaled at least $187,832 in connection with the leveraged, margined, or financed precious metals transactions that were introduced to AmeriFirst.

39.     As to the leveraged, margined, or financed precious metals transactions made on behalf of IMM's customers that were introduced to AmeriFirst, neither the Defendants nor AmeriFirst ever actually delivered any precious metals to IMM's customers in connection with those transactions.

40.     During the Relevant Period, none of the leveraged, margined, or financed precious metals transactions entered into with, or offered to, IMM's customers by Defendants were conducted on or subject to the rules of any board of trade, exchange, contract market, or derivatives transaction execution facility.

41.     During the Relevant Period, Defendant Sommers was the President and sole shareholder of IMM, and the signatory on IMM bank accounts.   Sommers had authority to hire and fire IMM employees, signed contracts on behalf of IMM, participated in creating IMM's marketing strategy, and placed and confirmed customer orders for precious metals.

42.     During the Relevant Period Defendant Sommers also himself solicited customers for IMM, and offered or accepted IMM customer orders in connection with leveraged, margined, or financed precious metals transactions.

### VII.     VIOLATIONS OF THE COMMODITY EXCHANGE ACT

**COUNT ONE**
**(Violations of Section 4(a) of the Act: Illegal Off-exchange Trading)**

43.     Paragraphs 1 through 42 of this Complaint are realleged and incorporated herein by reference.

44.     During the Relevant Period, the retail commodity transactions described in this Complaint were offered by Defendants and entered into (a) on a leveraged or margined basis, or financed by the offeror, the counterparty, or a person acting in concert with the offeror or counterparty on a similar basis, (b) with persons who are not ECPs or ECFs as defined by the Act, and (c) were not made or conducted on, or subject to, the rules of any board of trade, exchange or contract market, or derivatives transaction execution facility.

45.     The precious metals, including gold, silver, platinum, and palladium, described herein are commodities as defined by Section 1a(9) of the Act, 7 U.S.C. § 1a(9) (2012).

46.     During the Relevant Period, Defendants each violated Section 4(a) of the Act by offering to enter into, entering into, executing, confirming the execution of, or conducting an office or business in the United States for the purpose of soliciting or accepting orders for, or otherwise dealing in any transactions in, or in connection with, retail commodity transactions which were not conducted on or subject to the rules of a

11

board of trade designated or registered by the Commission as a contract market or derivatives transaction execution facility for such commodity.

47.     Each offer to enter into, entrance into, execution, confirmation, solicitation, or acceptance of an order in any transaction in, or in connection with, an off-exchange retail commodity transaction, made during the Relevant Period, is alleged as a separate and distinct violation of Section 4(a) of the Act, 7 U.S.C. § 6(a) (2012).

48.     In addition to his own violations of Section 4(a) of the Act, Sommers directly or indirectly controlled IMM and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting IMM's violations of Section 4(a) of the Act alleged in this Complaint.  Therefore, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13(b) (2012), Sommers is also liable for each of IMM's violations of Section 4(a) of the Act, 7 U.S.C. § 6(a) (2012).

49.     The acts and omissions of IMM's employees and agents, including Sommers, described in this Complaint were done within the scope of the individuals' employment or office with IMM.  Therefore, pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C § 2(a)(1)(B) (2012), IMM is liable as a principal for each of the acts, omissions or failures by its employees and agents, including Sommers, constituting violations of Section 4(a) of the Act, 7 U.S.C. § 6(a) (2012).

**COUNT TWO**
**(Violation of Section 4d of the Act: Dealing by**
**Unregistered Futures Commission Merchant)**

50.     Paragraphs 1 through 49 of this Complaint are realleged and incorporated herein by reference.

51.     During the Relevant Period, IMM violated Section 4d(a)(1) of the Act, 7 U.S.C. § 6d(a)(1) (2012), by soliciting or accepting orders for the retail commodity transactions described above, and in connection with such orders, accepted money, securities, or property (or extended credit in lieu thereof) to margin, guarantee, or secure any trades or contracts that resulted or may have resulted therefrom, when it was not registered with the Commission as an FCM.

52.     Each solicitation or acceptance of an order for the retail commodity transactions described above, and each acceptance of money, securities, or property (or extension of credit) to margin, guarantee, or secure such trades, during the Relevant Period, is alleged as a separate and distinct violation of Section 4d(a)(1) of the Act, 7 U.S.C. § 6d(a)(1) (2012).

53.     Sommers directly or indirectly controlled IMM and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting IMM's violations of Section 4d(a)(1) of the Act, 7 U.S.C. § 6d(a)(1) (2012), alleged in this Complaint. Therefore, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13(b) (2012), Sommers is also liable for each of IMM's violations of Section 4d(a)(1) of the Act, 7 U.S.C. § 6d(a)(1) (2012).

## VIII.   RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1, and pursuant to its own equitable powers, enter:

A.     An order finding that Defendants IMM and Sommers violated Sections 4(a) and 4d(a)(1) of the Act, 7 U.S.C. §§ 6(a) and 6d(a)(1) (2012);

13

B. An order of permanent injunction prohibiting Defendants, and any other person or entity associated with them, from engaging in conduct in violation of Sections 4(a) and 4d(a)(1) of the Act, 7 U.S.C. §§ 6(a) and 6d(a)(1) (2012);

C. An order of permanent injunction prohibiting Defendants and any of their successors from directly or indirectly:

 1) Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40));

 2) Entering into any transactions involving commodity futures, options on commodity futures, commodity options (as that term is defined in Commission Regulation 32.1(b)(1)), 17 C.F.R. § 32.1(b)(1) (2012)) ("commodity options")), security futures products, swaps (as that term is defined in Section 1a(47) of the Act, 7 U.S.C. § 1a(47), and as further defined by Commission Regulation 1.3(xxx), 17 C.F.R. § 1.3(xxx) (2012) ("swaps")), and/or foreign currency (as described in Sections 2(c)(2)(B) and 2(c)(2)(C)(i) of the Act, 7 U.S.C. §§ 2(c)(2)(B) and 2(c)(2)(C)(i) ("forex contracts")), for their own personal accounts or for any accounts in or over which they have a direct or indirect interest;

 3) Having any commodity futures, options on commodity futures, commodity options, security futures products, swaps, and/or forex contracts traded or executed on their behalf;

4)     Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures, commodity options, security futures products, swaps, and/or forex contracts;

5)     Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, options on commodity futures, commodity options, security futures products, swaps, and/or forex contracts;

6)     Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Commission Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2012); and

7)     Acting as a principal (as that term is defined in Commission Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2011)), agent, or any other officer or employee of any person registered, exempted from registration, or required to be registered with the Commission, except as provided for in Commission Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2012).

D.     An order requiring Defendants, as well as any of their successors, to disgorge, pursuant to such procedure as the Court may order, all benefits received, including but not limited to salaries, commissions, loans, fees,

revenues, and trading profits derived, directly or indirectly, from acts or practices that constitute violations of the Act or Commission Regulations as described herein, including pre- and post-judgment interest thereon;

E.      An order requiring Defendants, as well as any of their successors, to make full restitution, pursuant to such procedure as the Court may order, to each and every person or entity whose funds were received or utilized by them in violation of the provisions of the Act or Commission Regulations, as described herein, including pre- and post-judgment interest thereon;

F.      An order directing Defendants and any of their successors to rescind, pursuant to such procedures as the Court may order, all contracts and agreements, whether implied or express, entered into between them and any of the customers whose funds were received by them as a result of the acts and practices which constituted violations of the Act or Commission Regulations as described herein;

G.      An order requiring Defendants, jointly and severally, to pay civil monetary penalties under the Act, to be assessed by the Court, in amounts of not more than the greater of (1) triple Defendants' monetary gain or (2) $140,000 for each violation of the Act or Commission Regulations as described herein;

H.      An order requiring Defendants to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2412(a)(2) (2012); and

I.      An order providing such other and further relief as the Court may deem necessary and appropriate under the circumstances.

Dated:  September 30, 2014

Respectfully submitted,

/s/ Linda Y. Peng
Linda Y. Peng
Senior Trial Attorney
Bar ID# A5501953
lpeng@cftc.gov

David W. MacGregor
Chief Trial Attorney
Bar ID# A5501952
DMacgregor@cftc.gov

Manal M. Sultan
Deputy Director
Bar ID#A5501729
msultan@cftc.gov

Division of Enforcement
U.S. Commodity Futures Trading
Commission
140 Broadway, 19th Floor
New York, NY 10005
(646)746-9733
(646)746-9940 (facsimile)
Attorneys for Plaintiff