UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, | ) ) ) | Case No. 14-cv-62244-WJZ |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| INTERNATIONAL MONETARY METALS, INC., and MARTIN SOMMERS, | ) ) ) | |
| Defendants/Third-Party Plaintiffs | ) ) | |
| v. | ) ) | |
| WORTH GROUP, INC., | ) ) | |
| Third-Party Defendant. | ) ) | |

**THIRD-PARTY COMPLAINT**

Pursuant to Fed. R. Civ. P. 14(a), Defendants International Monetary Metals, Inc. and Martin Sommers (collectively "IMM" or Third-Party Plaintiffs), bring this Third-Party Complaint against Worth Group, Inc. ("Worth").

BACKGROUND

**A. The CFTC forum shops for a ruling against Worth's actual delivery.**

1.  Plaintiff the U.S. Commodity Futures Trading Commission's ("CFTC") has filed against IMM a Complaint, D.E. 1 to this action, seeking among other relief restitution, disgorgement, and civil monetary penalties in connection with IMM's precious metals transactions with the Third-Party Defendant, Worth.

2.  In the Complaint the CFTC contends that Worth's system of delivering precious metals to IMM's retail customers failed to result in "actual delivery" under 7 U.S.C. § 2(c)(2)(D)

1

of the Commodity Exchange Act ("CEA"), as amended by the Dodd-Frank Wall Street Reform and Consumer Protection Act's ("Dodd-Frank"). As a result, the CFTC alleges, all the transactions IMM did with Worth were illegal. On this theory, the CFTC asks for extraordinary monetary and equitable relief against IMM.[1]

3. The CFTC's contentions against IMM are not original. The CFTC brought, or tried to bring, exactly the same claims against Worth directly in *CFTC v. Worth Group, Inc.*, *et al.*, Case No. 13-cv-80796-KLR (S.D. Fla.).

4. In that action, Judge Ryskamp barred the CFTC's attempt to dispute "actual delivery" under § 2(c)(2)(D). CFTC interpretive rules from 2011 (the year the Dodd-Frank amendments went into effect) had validated Worth's delivery system, and Judge Ryskamp ruled the CFTC's allegations represented a substantial after-the-fact change in interpretation, offensive to Worth's due process rights.

5. The CFTC's case against Worth based on Worth's purported untimely delivery (after 28 days) of certain transactions has continued. Judge Ryskamp, however, struck the CFTC's report on the alleged late deliveries as unreliable and barred the CFTC from submitting a new report. Upon information and belief, these events have led to a settlement in principle of the *Worth* action.

6. All of these events in the *Worth* action bear directly on the CFTC's action against IMM. Indeed, the transactions the CFTC at various times tried to claim were "illegal" in *Worth* include the same IMM transactions the CFTC contends were "illegal" in this case. And they

---

[1] Separate from IMM's transactions with Worth, the Complaint alleges IMM should be liable for purported transactions with another precious metals wholesaler, AmeriFirst. The AmeriFirst transactions play no part in this Third-Party Complaint and are wholly irrelevant.

were allegedly "illegal" for the same reason—Worth's purported failure to make actual timely delivery.

7.     IMM denies the CFTC's allegations about Worth in this case and maintains, among other defenses, that Worth's delivery mechanism fully satisfied the 28 day delivery requirements of Dodd-Frank and that, in any event, it would violate due process to allow the CFTC to change the meaning of "actual delivery" so that Worth (and IMM) are made liable. Moreover, "actual delivery" within 28 days is a jurisdictional prerequisite under § 2(c)(2)(D); if Worth delivered metals to IMM's customers within 28 days (which it did), the CFTC has no jurisdiction to bring this case (as it relates to Worth).

**B. Timely delivery under Dodd-Frank was central to IMM and Worth's relationship.**

8.     The <u>lack</u> of CFTC jurisdiction, and Worth's compliance with Dodd-Frank, formed the central promise of Worth's customer relationship with IMM.  Worth promised, in return for compensation, to deliver precious metals to customers within 28 days, and IMM delegated to Worth full and complete responsibility for doing so.  Worth represented this delivery satisfied Dodd-Frank and that the CFTC would have no jurisdiction over the transactions.

9.     Only if Worth's representations about its Dodd-Frank compliant precious metals delivery within 28 days and the lack of CFTC jurisdiction were untrue could IMM be liable to the CFTC in this enforcement action.

10.    Accordingly, If IMM is liable to the CFTC, then IMM's liability is only technical or secondary or partial; Worth is derivatively liable and must reimburse IMM for all or part of anything IMM must pay to the CFTC.

## JURISDICTION AND VENUE

11. The CFTC alleges subject matter jurisdiction for its enforcement action under 7 U.S.C. §§ 2(c)(2)(D) and 13a-1(a). IMM has denied such jurisdiction and maintains this Court should dismiss this action for lack of subject matter jurisdiction because the transactions at issue were outside the CFTC's jurisdiction, and therefore outside this Court's subject matter jurisdiction. If this Court can claim subject matter jurisdiction under 7 U.S.C. §§ 2(c)(2)(D) and 13a-1(a), however, then this Court has ancillary jurisdiction over IMM's third-party claim under 28 U.S.C. § 1367(a).

12. Venue is appropriate on the third-party claim because venue is appropriate in the main proceeding; venue in this court also independently exists over the third-party claim under 28 U.S.C. § 1391(b)(1) and (2).

## MATERIAL ALLEGATIONS

**C. Worth promises to satisfy Dodd-Frank's actual delivery exception.**

13. In about 2010, the Dodd-Frank amendments to 7 U.S.C. § 2(c)(2)(D) expanded CFTC jurisdiction over financed commodity transactions, which would include precious metals sales bought on margin or with financing. There are defined exceptions, however. One exception exempts from CFTC jurisdiction "a contract of sale that … results in actual delivery within 28 days…." *Id*. at § 2(c)(2)(D)(ii)(III).

14. Worth is a Florida corporation that previously operated under the name Worth Bullion Group Inc. Worth is a wholesaler of physical precious metals. Worth allows customers to buy precious metals on a leveraged basis.

15. IMM is a Florida corporation that, between about July 2011 through and including February 2013, solicited customers to purchase precious metals from Worth, both on a fully paid and leveraged basis.

16. Martin Sommers was a shareholder IMM. In the main Complaint, the CFTC alleges Mr. Sommers is supposedly liable on a control person theory for IMM's purportedly "illegal" transactions with Worth. Mr. Sommers in fact was not a control person.

17. The Dodd-Frank Act amendments went into effect in July 2011.

18. In or around that time, Worth and IMM entered into a customer relationship.

19. The essential promise that induced the relationship was Worth's representation that it was making "actual delivery" within 28 days in satisfaction of Dodd-Frank's jurisdictional exemption.

20. Relying on these representations, IMM delegated to Worth full responsibility to make timely "actual delivery" in accordance with § 2(c)(2)(D) and, between about July 2011 and February 2013, entered into numerous cash and leveraged precious metals transactions with Worth for IMM's retail customers.

**D. IMM receives assurances that Worth's delivery provisions satisfy Dodd-Frank.**

21. The term "actual delivery" is not defined by the CEA. But five months after the effective date of Dodd-Frank's "retail commodity" provision, the CFTC issued an interpretation and request for public comments on the meaning of "actual delivery." It stated, "the Commission will employ a functional approach and examine how the agreement, contract, or transaction is marketed, managed, and performed, instead of relying solely on language used by the parties in the agreement, contract, or transaction." *See* Retail Commodity Transactions Under Commodity Exchange Act, 76 Fed. Reg. 77670, 77672 (Dec. 14, 2011), Ex. C hereto.

22. The CFTC also provided some non-exclusive examples of circumstances where "actual delivery" would occur. Example 2 described a system where, within 28 days, the seller "physically delivered the entire quantity of the commodity purchased by the buyer, including any portion of the purchase made using leverage, margin, or financing, whether in specifically segregated or fungible bulk form, <u>into the possession of a depository other than the seller</u>." *Id.* (emphasis added).

23. The CFTC issued another interpretation in 2013 with few changes. The CFTC explained, "[s]ignificantly, no commenters criticized, expressed disagreement with, or questioned the underlying foundation for the Commission's approach…." The example of "actual delivery" through a depository remained the same. Retail Commodity Transactions Under Commodity Exchange Act, 78 FR 52426-01 (Aug. 23, 2013), Ex. D hereto.

24. IMM understood these interpretations described Worth's delivery system exactly. IMM therefore had full confidence Worth was making timely actual delivery within 28 days as represented.

**E. The CFTC separately sues Worth and IMM for untimely deliveries and disavows its previous interpretive notices.**

25. In about August 2013, the CFTC sued Worth alleging precious metals deliveries had not been timely made within 28 days.

26. In August 2014, the CFTC moved for leave to amend the Complaint in *Worth* to claim that Worth's delivery system failed to qualify as "actual delivery" under Dodd-Frank.

27. Judge Ryskamp denied the motion to amend the Complaint finding, among other things, that it would violate due process to allow the CFTC to change its previous interpretations of "actual delivery" and, in effect, make all of Worth's transactions illegal.

28. In about August 2014, the CFTC brought this action against IMM and Martin Sommers claiming that "Worth failed to make actual delivery of precious metals to IMM's customers" and therefore all of IMM's leveraged precious metals transactions with Worth were all illegal." Complaint at 35, D.E. 1.

29. IMM and Sommers have denied all liability and asserted affirmative defenses, relying entirely on the knowledge and belief that Worth was making actual delivery within 28 days on all IMM transactions within the meaning of Dodd-Frank.

30. All conditions precedent to this action have occurred or have been satisfied.

## COUNT I—COMMON LAW INDEMNITY

31. IMM realleges and incorporates paragraphs 30 as if specifically and fully set forth herein.

32. Any potential liability IMM has to the CFTC depends on whether Worth made actual delivery of metals to IMM's customers within 28 days.

33. To the extent Worth failed to make actual delivery to IMM customers within 28 days (which IMM in no way concedes), IMM is without fault.

34. If IMM is liable to the CFTC (which IMM denies), IMM's liability is solely vicarious for the wrongdoing of Worth. IMM's right to indemnity from Worth therefore is only from the party at fault.

35. IMM and Worth had a special relationship, as IMM relied on Worth's representations and delegated to Worth the duty to deliver precious metals to IMM's customers within 28 days in accordance with Dodd-Frank; Worth was paid to do so.

36. Worth therefore is liable to IMM for indemnification of all losses, damages, attorneys' fees, awards, and/or monetary penalties caused by Worth's failure to make actual delivery within 28 days on IMM customer orders.

WHEREFORE, IMM demands judgment against Worth for all or part of any sums that may be adjudged against IMM in the CFTC's favor, interest, attorneys' fees and costs, and any other or additional relief this Court deems just and proper.

### COUNT II—NEGLIGENT MISREPRESENTATION

37. IMM realleges and incorporates paragraphs 30 as if specifically and fully set forth herein.

38. Worth represented to IMM that the transactions were beyond CFTC jurisdiction and that Worth was actually delivering precious metals within 28 days on all transactions in accordance with Dodd-Frank. To the extent the CFTC has jurisdiction in this case and Worth was not making timely delivery under Dodd-Frank, Worth's statements were misrepresentations of material fact.

39. In that event Worth negligently made the misrepresentations without knowledge of their truth or falsity, or otherwise should have known the representations were false.

40. Worth made the representations with the intent to induce IMM to act on the misrepresentations, and specifically to induce IMM to purchase precious metals from Worth on behalf of retail customers.

41. IMM suffered a resulting injury while acting in justifiable reliance upon Worth's misrepresentations.

WHEREFORE, IMM demands judgment against Worth for all or part of any sums that may be adjudged against IMM in the CFTC's favor, interest, costs, and any other or additional relief this Court deems just and proper.

Respectfully submitted:

**HOMER BONNER JACOBS**

*Attorneys for Defendants*
1200 Four Seasons Tower
1441 Brickell Avenue
Miami, Florida 33131
Phone:  (305) 350-5192
Fax:  (305) 982-0069

By:   /s/ Peter W. Homer
      Peter W. Homer
      Florida Bar No.:  291250
      Email:  phomer@homerbonner.com
      Christopher J. King
      Email:  cking@homerbonner.com
      Florida Bar No.:  0123919

## CERTIFICATE OF SERVICE

**I hereby certify** that a true and correct copy of the foregoing was served by CM/ECF on September 25, 2015 on all counsel or parties of record on the Service List below.

      Linda Y. Peng
      David W. MacGregor
      Manal M. Sultan
      David C. Newman
      R. Stephen Painter , Jr.
      U.S. Commodity Futures Trading Commission
      140 Broadway, 19th Floor
      New York, NY 10005
      (646) 746-9733
      (646) 746-9940 | Fax
      lpeng@cftc.gov
      dmacgregor@cftc.gov
      msultan@cftc.gov
      dnewman@cftc.gov
      spainter@cftc.gov

   /s/ Peter W. Homer